547 So.2d 914 (1989)
Carlos BELLO, Appellant,
v.
STATE of Florida, Appellee.
No. 70552.
Supreme Court of Florida.
July 6, 1989.
Rehearing Denied September 15, 1989.
*915 James Marion Moorman, Public Defender, and Steven L. Bolotin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland and Joseph R. Bryant, Asst. Attys. Gen., Tampa, for appellee.
EHRLICH, Chief Justice.
Carlos Bello, a prisoner under sentence of death, appeals his convictions for first-degree murder, delivery of cannabis, possession of cannabis, attempted first-degree murder, and resisting arrest with violence and the sentences attendant thereto. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions but vacate the sentences and remand for a new sentencing proceeding.
According to testimony presented at trial, in 1981 an undercover Tampa police detective, Alfred Peterson, arranged with Juan Amaro for the purchase of fifty pounds of marijuana. On July 24, 1981, Peterson met with Amaro, Juan Rodriguez, Sergio Villegas, Manuel Dorta, and Carlos Bello at a residence in Tampa. After being shown the marijuana in the northeast bedroom of the residence, Peterson went outside to retrieve the purchase money from the trunk of his automobile and also to signal his back-up police support to proceed with the arrest. Peterson attempted to signal using an electronic device, a "bust bug," which apparently malfunctioned. Back inside the house, Peterson stalled for time by asking Bello to count the money and weigh the marijuana. Peterson then asked to use the restroom, and there successfully used the "bust bug" to signal the back-up. Police officers wearing "raid" jackets which identified them as Tampa police and shouting their identities entered the residence. Detective Ulriksen kicked open the door to the northeast bedroom and entered. Ulriksen testified that he saw someone behind the dresser, saw a flash from the muzzle of a gun, and was shot three times. One of those bullets struck Rodriguez, who was in the room, in the head. The door closed, at least partially. As Detectives Rauft and Mock pushed against the door, two shots were fired through the door, mortally wounding Rauft.
Carlos Bello was charged with the first-degree murder of Rauft, attempted first-degree murder of Ulriksen, possession of cannabis, delivery of cannabis, and resisting arrest with violence. However, Bello was found incompetent to stand trial. It was not until February of 1987 that Bello was adjudicated competent to stand trial, and the trial proceeded in February and March of that year.
*916 At trial, Ulriksen identified Bello as the man who shot him. Evidence at trial also indicated that both officers were shot using a gun recently purchased by Bello. The jury found Bello guilty of all counts, including first-degree murder, and recommended death. The trial court sentenced Bello to death for the first-degree murder count, finding four aggravating circumstances and one mitigating circumstance. On the remaining counts, the trial court sentenced Bello to consecutive sentences of fifteen years, fifteen years, life imprisonment, and fifteen years, which represented a departure from the sentencing guidelines.

GUILT PHASE
Bello first contends that there was insufficient circumstantial evidence to prove the killing of Detective Rauft was premeditated. He argues that it is consistent with the evidence to infer that he could have fired to give himself time to escape through the window. We disagree. It is well established that "to prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence." Wilson v. State, 493 So.2d 1019, 1022 (Fla. 1986). However, Bello's hypothesis itself is not inconsistent with premeditation and at best is relevant only to the motive behind the shooting. Upon careful consideration, we find there was sufficient evidence from which the jury could have inferred premeditation to the exclusion of all other possible inferences. It is clear from the record that Bello knew that police officers were attempting to enter the room, and he fired at an angle that would most likely hit, and probably kill, anyone attempting to open the door.
Bello next argues that the jury should not have been given an instruction on transferred intent. We agree. Over defense counsel's objection that the instruction was not applicable to this case, the trial judge gave the following instruction:
If a person has a premeditated design to kill one person and in attempting to kill that person actually kills another person, the killing is premeditated.
This is from the Florida Standard Jury Instructions (Criminal) which includes the direction "give if applicable." As this Court stated in Wilson v. State:
Under the doctrine of transferred intent, as accepted by this Court: "One who kills a person through mistaken identity or accident, with a premeditated design to kill another, is guilty of murder in the first-degree... . The law transfers the felonious intent in such a case to the actual object of his assault... ." Lee v. State, 141 So.2d 257, 259 (Fla. 1962).
493 So.2d at 1023. No such circumstances existed in this case. Bello argues that the giving of this instruction under the facts of this case was confusing, and allowed the jury, if it found the attempted murder of Detective Ulriksen to have been premeditated, to improperly transfer that intent to the shooting of Detective Rauft.
While we agree that the instruction on transferred intent was inapplicable to this case and should not have been given, under the circumstances of this case we believe the error was harmless. No argument was made to the jury that if it found Bello intended to kill Ulriksen that intent could be transferred to Rauft's murder. The jury was given a valid instruction on premeditation and there was sufficient evidence to support the jury's finding of premeditation. Under these circumstances, we find that there is no reasonable possibility that the giving of the erroneous instruction contributed to the conviction, see State v. DiGuilio, 491 So.2d 1129, 1138 (Fla. 1986), and therefore the error was harmless.
Finding no reversible error during the guilt phase of the trial, we affirm Bello's conviction for first-degree murder.

PENALTY PHASE
Bello raises seven issues concerning the penalty phase of the trial of which only four merit discussion.[1] Those issues are: *917 (1) alleged improper shackling of the defendant; (2) alleged improper doubling of aggravating factors; (3) alleged error in failure to find mitigating factor of "no significant history of prior criminal activity"; (4) imposition of the death penalty violates the eighth amendment where there is a bare majority death recommendation.
In sentencing Bello to death, the trial judge found four aggravating circumstances: (1) previous conviction of a violent felony;[2] (2) defendant knowingly created a great risk of death to many persons;[3] (3) committed for the purpose of avoiding lawful arrest;[4] (4) committed to disrupt or hinder law enforcement.[5] Bello argues that application of both the factors of committed to avoid lawful arrest and committed to disrupt or hinder law enforcement constitutes impermissible "doubling," i.e., finding two aggravating circumstances based on a single aspect of the offense. We agree. This Court has repeatedly held that application of both of these aggravating factors is error where they are based on the same essential feature of the capital felony. See, e.g., Jackson v. State, 498 So.2d 406 (Fla. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); Thomas v. State, 456 So.2d 454 (Fla. 1984). In this case, Bello clearly fired to prevent the police officers from entering the bedroom to take him into custody. This had the incidental effect of preventing the officers from coming to the assistance of the injured Detective Ulriksen. However, that alone is not sufficient to justify two separate aggravating circumstances on these facts. Therefore, only one of these two statutory aggravating circumstances may be properly found.
Bello does not challenge the two remaining aggravating circumstances. Upon review of the record, however, we find that application of the aggravating circumstance of knowingly creating a great risk of death to many persons is not warranted in this case. As we stated in Kampff v. State, 371 So.2d 1007, 1009-10 (Fla. 1979):
When the legislature chose the words with which to establish this aggravating circumstance, it indicated clearly that more was contemplated than a showing of some degree of risk of bodily harm to a few persons. "Great risk" means not a mere possibility but a likelihood or high probability. The great risk of death created by the capital felon's actions must be to "many" persons. By using the word "many," the legislature indicated that a great risk of death to a small number of people would not establish this aggravating circumstance.
In this case, Bello's actions created a high probability of death to at most only three people besides the victim. The other people considered by the trial court to have been put at risk were too far away, separated by several walls, or out of the line of fire so that there was only a possibility of their being killed by Bello's actions in shooting through the bedroom door. As this Court has previously noted, "[t]hree people simply do not constitute `many persons'" within the meaning of this statutory aggravating factor. Lucas v. State, 490 So.2d 943, 946 (Fla. 1986). We therefore find that it was error to find this aggravating factor in this case.
The trial judge found one mitigating circumstance: committed while under the influence of extreme emotional disturbance.[6] However, the trial judge also expressly ruled that the mitigating circumstance of no significant history of prior criminal activity[7] was inapplicable because of the finding of the aggravating circumstance *918 of conviction of a prior violent felony, which was based on the conviction for contemporaneous crimes. Recently in Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989), we held that a "history" of prior criminal conduct cannot be established by contemporaneous crimes. In this case, this was the only reason why the judge did not find that mitigating circumstance, and there is no evidence in the record of any other criminal activity. Therefore, failure to find that mitigating factor was error in this case.
The jury in this case recommended the death penalty by a bare majority, seven-to-five vote. Bello argues that his death sentence violates the eighth amendment to the United States Constitution because a bare majority jury death recommendation is not reliably different from a tie vote jury recommendation. This issue was not presented to the court below, and therefore was not preserved for appeal.
Because we find that two of the four aggravating factors were improperly applied to this case, and that the trial judge should have found two statutory mitigating factors, we vacate the sentence of death and remand for a new sentencing proceeding. Normally, this would require a new sentencing proceeding before the judge. However, for the following reasons we must require that the new sentencing proceeding be before a jury.
During the penalty phase, the defendant was shackled. Defense counsel objected, but the trial judge overruled the objection without making any inquiry into the necessity for the shackling. Bello argues that this was prejudicial error requiring a new sentencing proceeding before a jury. We agree. We noted in Elledge v. State, 408 So.2d 1021, 1022 (Fla. 1981), cert. denied, 459 U.S. 981, 103 S.Ct. 316, 74 L.Ed.2d 293 (1982), that most "[c]ases which concern such prejudice deal with the adverse effects that such restraints have upon the accused's presumption of innocence." For that reason, it may be that a lesser showing of necessity is required to permit the shackling of the defendant in the penalty phase than in the guilt phase. Contra Elledge v. Dugger, 823 F.2d 1439 (11th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988). However, this does not mean that no inquiry into the reasons behind the shackling is required in the penalty phase. In Elledge, we noted that
the record indicate[d] the judge had information that the appellant had threatened to attack his bailiff. Elledge through his confessed acts had proven himself a man of his word when violence was threatened, so we would be hard pressed to find the trial court abused its discretion in taking such precautions.
408 So.2d at 1023. In this case, although defense counsel objected to the shackling and requested that an inquiry be made, the trial judge refused to do so, deferring to the sheriff's apparent judgment that such restraint was necessary without inquiring into the reasons behind that decision. Further, there is no evidence in the record to support the need for such restraint. Shackling is an "inherently prejudicial practice," Holbrook v. Flynn, 475 U.S. 560, 568, 106 S.Ct. 1340, 1345, 89 L.Ed.2d 525 (1986), and must not be done absent at least some showing of necessity. Because the trial judge in this case made no inquiry into the necessity for the shackling, the defendant is entitled to a new sentencing proceeding before a jury.
Bello also raises two issues concerning the non-capital offenses of which he was convicted. He first argues that his separate convictions and sentences for delivery and possession of the same marijuana violates the double jeopardy clause of the United States Constitution. We disagree. The evidence in this case clearly showed that in addition to the drugs delivered to the undercover officer, Bello possessed at least one other container of drugs. Therefore, Bello was properly convicted of delivery of some of his marijuana, and possession of the rest.
Bello also argues, and the state apparently concedes, that he was improperly sentenced for the non-capital offenses under the sentencing guidelines. We must *919 agree. The crimes in this case were committed on July 24, 1981, more than two years before the effective date of the sentencing guidelines. For crimes committed prior to October 1, 1983, an affirmative election to be sentenced under the guidelines must be made. § 921.001(4)(a), Fla. Stat. (1987). As the record is devoid of any indication that Bello made an affirmative election, the sentences imposed for counts II through V must be vacated, and Bello must be resentenced.
We therefore affirm Bello's convictions on all counts, but vacate all sentences based on those convictions, and remand for a new sentencing proceeding, which must be before a jury on the first-degree murder conviction.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] We find Bello's arguments regarding the following issues to be meritless:

(1) imposition of the death penalty is proportionally unwarranted;
(2) application of the death penalty to the mentally ill (but not legally insane) is cruel and unusual punishment;
(3) alleged violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
[2] § 921.141(5)(b), Fla. Stat. (1981).
[3] § 921.141(5)(c), Fla. Stat. (1981).
[4] § 921.141(5)(e), Fla. Stat. (1981).
[5] § 921.141(5)(g), Fla. Stat. (1981).
[6] § 921.141(6)(b), Fla. Stat. (1981).
[7] § 921.141(6)(a), Fla. Stat. (1981).