587 So.2d 450 (1991)
Henry Perry SIRECI, Appellant,
v.
STATE of Florida, Appellee.
No. 76087.
Supreme Court of Florida.
September 19, 1991.
Rehearing Denied November 4, 1991.
*451 James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Henry Sireci appeals the sentence of death imposed upon him for the 1976 murder of Howard Poteet. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
We detailed the facts of the murder in Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), in which we affirmed Sireci's conviction and original death sentence. Sireci went to Poteet's used car lot armed with a wrench and knife. The defense argued that Sireci intended to take car keys so that he could steal an automobile later. According to the State, Sireci's intent was to rob Poteet at that time. While the two were in the victim's office, Sireci hit the victim with the wrench and stabbed him numerous times during the course of a struggle. Poteet sustained approximately fifty-five stab wounds and numerous lacerations and abrasions. His neck was slit. Sireci took the victim's wallet.
This Court affirmed the denial of Sireci's first 3.850 motion. Sireci v. State, 469 So.2d 119 (Fla. 1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3308, 92 L.Ed.2d 721 (1986). The trial court held an evidentiary hearing on Sireci's second 3.850 motion and ultimately ordered a new sentencing hearing on grounds that two court-appointed psychiatrists conducted incompetent evaluations at the time of the original trial. Upon resentencing, the jury recommended the death penalty by a vote of eleven to one *452 and the trial court again imposed the death penalty.[1]
Sireci raises six claims of error in this appeal. First, he alleges that the trial judge abused his discretion in refusing to waive the jury sentencing recommendation. Prior to the resentencing proceeding, Sireci submitted a waiver of the jury sentencing recommendation to which the State objected. The trial court refused to grant the waiver. Sireci argues on appeal that the waiver should have been granted because, given the time lapse between the conviction and the resentencing proceeding, the jury would necessarily know of and be prejudiced by the prior death sentence.
The law is clear that a trial judge "upon a finding of a voluntary and intelligent waiver, may in his or her discretion either require an advisory jury recommendation, or may proceed to sentence the defendant without such advisory jury recommendation." State v. Carr, 336 So.2d 358, 359 (Fla. 1976). See also Palmes v. State, 397 So.2d 648, 656 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). Regardless of the jury's recommendation, the trial judge must conduct an independent review of the evidence and make his or her own findings regarding aggravating and mitigating factors. Spaziano v. Florida, 468 U.S. 447, 466, 104 S.Ct. 3154, 3155-56, 82 L.Ed.2d 340 (1984). The trial judge here noted that if he found the jury was influenced by improper considerations, he had "the ability and the duty to lessen the reliance upon the jury's verdict." Even if the jury may have surmised that the defendant had been previously sentenced to death, we find no abuse of discretion in the trial court's refusal to waive an advisory jury sentencing recommendation.
While admitting that under the circumstances of this case the jury could not help but perceive that Sireci had been on death row, Sireci also claims that the trial court erred in refusing to grant a mistrial after the prosecutor made reference to this fact. The trial court had issued a pretrial order prohibiting the State from revealing that Sireci had been sentenced to death previously for the Poteet murder. Dr. Lewis, one of Sireci's mental health experts, had conducted a study of death row inmates, including Sireci. The following interchange occurred during the State's cross-examination of Dr. Lewis:
Q. [Prosecutor]: Maybe it's not a paranoid ideation, is that correct?
A. [Dr. Lewis]: Maybe it's not, but I would put my reputation on the fact that it is. It is  I mean it's demonstrated. It's one of the research criteria.
Q. It's what you expected to find of this man on death row, isn't that correct?
The trial court denied defense counsel's motion for mistrial but cautioned the prosecutor to avoid reference to Sireci's death row status.
Determination of whether substantial justice warrants granting a mistrial is within the discretion of the trial judge. Dufour v. State, 495 So.2d 154, 163 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); Marek v. State, 492 So.2d 1055, 1057 (Fla. 1986). The prosecutor's remark violated the pretrial order. Nevertheless, prosecutorial improprieties must be viewed in the context of the record as a whole to determine if a new trial is warranted. State v. Murray, 443 So.2d 955, 956 (Fla. 1984). Although a prior sentence should not play a role in resentencing proceedings, we have found no error where the record reflected that the impact of merely mentioning a prior death sentence was negligible. Teffeteller v. State, 495 So.2d 744 (Fla. 1986).
The prosecutor's reference to the prior death sentence was minimal. He did not indicate that a prior jury had recommended *453 the death penalty. See id. at 747. Moreover, our analysis of a later colloquy with the court outside the presence of the jury leads us to conclude that the comment was inadvertent. In addition, the trial judge noted that any "halfway intelligent" juror would determine that Sireci had been sentenced to death previously for this crime. This was true for two reasons. First, most of the defense psychiatric information was accumulated while Sireci was on death row. Drs. Lewis and Pincus, mental health experts for the defense, had examined Sireci as part of a study of death row inmates. Although Dr. Lewis sought to avoid reference to death row during her testimony, it was impossible to eliminate such reference completely. Dr. Lewis testified during direct examination that she had conducted studies of death row inmates along with Dr. Pincus and others. She indicated that she had met Sireci as part of a study of men who had committed murder and that he was one of eight or ten individuals interviewed who were incarcerated in Starke. Jurors easily could have concluded from Dr. Lewis's direct examination that Sireci was part of the death row study. Second, given the time lapse between the conviction and the sentencing proceeding, it is likely that the jury would have suspected, if not known, that a death sentence had been imposed previously.
Based upon our review of the record, we find no abuse of discretion in the trial court's refusal to grant a mistrial. The prosecutor's reference to the prior death sentence did not prejudice the defendant or play a significant role in the resentencing proceeding so as to warrant a mistrial. Teffeteller, 495 So.2d at 747.
Sireci also claims reversible error in the trial court's refusal to poll the jurors concerning their use of the knowledge of the prior death sentence. We note only that the Evidence Code prohibits judicial inquiry into the emotions, mental processes, or mistaken beliefs of jurors. § 90.607(2)(b), Fla. Stat. (1989); State v. Hamilton, 574 So.2d 124, 128 (Fla. 1991).
Next, Sireci claims that the trial court erred in failing to find the four statutory mitigating factors asserted by the defense. The defense attempted to establish that Sireci was under the influence of extreme mental or emotional disturbance; that he acted under extreme duress or the substantial domination of another; that he lacked the capacity to appreciate the criminality of his conduct or that his capacity to conform his conduct to the requirements of law was substantially impaired; and that the crime was affected by his age at the time of its commission. The trial court concluded that no statutory mitigating factors were established but found the existence of nonstatutory mitigating evidence.
The decision as to whether a particular mitigating circumstance is established lies with the judge. Reversal is not warranted simply because an appellant draws a different conclusion. Stano v. State, 460 So.2d 890, 894 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985). Further, it is the trial court's duty to resolve conflicts in the evidence, and that determination should be final if supported by competent, substantial evidence. Id.
The evidence was clearly insufficient to establish that Sireci acted under extreme duress or the substantial domination of another or that his age of twenty-seven played any part in the murder. There was conflicting testimony on the remaining statutory mitigators. Mental health experts agreed that Sireci suffered from brain damage which probably occurred when he was involved in an automobile accident at the age of sixteen. However, the experts disagreed on the extent and effect of that brain damage. Dr. Lewis testified that Sireci was severely brain injured, functionally retarded, and psychotic and that he could not appreciate the magnitude or consequences of his acts. Dr. Pincus testified that he found very strong evidence of organic brain disease which constrained Sireci's free will. However, State expert witness Dr. Upson opined that Sireci's brain damage had no significant connection to the murder, that Sireci understood the consequences of his behavior, and that he could conform his *454 actions to the requirements of law. A radiologist who testified for the State indicated that Sireci's CAT scan and MRI tests indicated only mild brain injury. In view of the conflicting evidence, the trial judge could properly conclude that the statutory mental mitigating circumstances had not been proven.
Sireci also presented substantial evidence regarding his difficult childhood. Testimony indicated that he was physically and emotionally abused by his father and sexually abused by his mother. The trial judge found nonstatutory mitigation as indicated in the sentencing order:
In spite of his bleak childhood the Defendant was a hard and steady worker. He manifested a concern for others and was unselfish with his friends and family. He has done well in prison. He has brain damage and has suffered abuse as a child.
The Defendant's brain damage and history of abuse resulting in his having at least two factors common in aggressive violent persons does not establish an uncontrolled propensity for violence nor can it be found to be the cause of the heinous nature of the offense but does cause this court to give lesser weight to that aggravating circumstance.
We find competent, substantial evidence to support the trial court's findings regarding the mitigating evidence.
Sireci's next claim is that cumulative errors rendered the jury recommendation defective. Relying upon Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989),[2] Sireci argues that the State improperly introduced victim-impact evidence through the victim's wife and son. In Booth and Gathers, the United States Supreme Court held that a capital sentencing jury may not consider evidence or argument relating to the personal characteristics of the victim and the emotional impact of the crime on the victim's family. We find nothing in the record that constitutes the type of evidence or argument prohibited by those cases. The victim's wife testified that Poteet was carrying his wallet when he was murdered. This was relevant to establish that the murder was committed during a robbery. The victim's son, who worked at the car lot where the murder occurred, testified about the operating procedures of the business, his father's practices in closing the lot at night, the location of the money, and the location of the car keys, all of which were relevant to the circumstances of the crime. Further, the trial judge noted on the record that neither the wife nor son displayed any emotion during their testimony.
We reject Sireci's complaint that it was improper to allow the wife and son to remain in the courtroom after their testimony. Article I, section 16(b) of the Florida Constitution guarantees victims of crimes, including the next of kin of homicide victims, the right to be present at all crucial stages of criminal proceedings, to the extent that it does not interfere with the constitutional rights of the accused.
Sireci also claims error in the testimony of State witness Barbara Perkins. Perkins, with whom Sireci was living at the time of the murder, testified that after Sireci read about the murder in the newspaper, "he seemed rather proud of it." Sireci correctly argues that this constitutes impermissible testimony on lack of remorse. See Robinson v. State, 520 So.2d 1, 6 (Fla. 1988). After reviewing the record, we find this comment to be harmless beyond a reasonable doubt. Valle v. State, 581 So.2d 40, 46 (Fla. 1991).
Sireci's claim that section 921.141, Florida Statutes (1987), is unconstitutional on its face and as applied is without merit. Similarly, we find no merit in the claim that the Court violates the separation of powers *455 doctrine in defining the operative terms of section 921.141. See Firestone v. News-Press Publishing Co., 538 So.2d 457, 460 (Fla. 1989) (court may place narrowing construction on statute, so long as it does not effectively rewrite the statute). Finally, we have previously rejected the argument that application of the cold, calculated, and premeditated factor to a crime committed before the legislature enacted that aggravating factor violates the ex post facto clause. Zeigler v. State, 580 So.2d 127 (Fla. 1991); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982).
We affirm the imposition of the death penalty.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The trial court found five aggravating circumstances: (1) The defendant was previously convicted of another capital felony or a felony involving the use or threat of violence (a prior murder and an earlier robbery); (2) the murder was committed during a robbery and for pecuniary gain; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest by eliminating a witness; (4) the murder was especially heinous, atrocious, or cruel; and (5) the murder was cold, calculated, and premeditated. The court found nonstatutory mitigating circumstances but no statutory mitigating circumstances.
[2] The United States Supreme Court recently overruled Booth and Gathers and held that the Eighth Amendment does not prohibit the admission of victim-impact evidence and prosecutorial argument on that subject if a state chooses to permit the admission of such evidence and argument. Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). We do not discuss the application of Payne to this case.