[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14402

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 21, 2010
JOHN LEY
CLERK

D. C. Docket No. 02-01160-CV-MSS-KRS

HENRY PERRY SIRECI,

Petitioner-Appellant,

versus

ATTORNEY GENERAL, STATE OF FLORIDA,
SECRETARY, DEPT. OF CORRECTIONS,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 21, 2010)

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Henry Sireci is an inmate on Florida's death row for one count of first-degree murder. Sireci appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition.

Sireci was tried and convicted in October 1976 for the murder of Howard Poteet. The jury found Sireci guilty of first-degree murder and the trial court sentenced him to death. The Florida Supreme Court affirmed Sireci's conviction and death sentence. Sireci v. State, 399 So. 2d 964, 972 (Fla. 1981). The United States Supreme Court denied certiorari. Sireci v. Florida, 458 U.S. 1116, 102 S. Ct. 3500, 73 L. Ed. 2d 1378 (1982). During the intervening years, Sireci was housed on Florida's death row.

Sireci then filed successive motions for post-conviction relief under Florida Rule of Criminal Procedure 3.850. His first motion raised claims not at issue here; the Florida Supreme Court affirmed the trial court's denial of those claims. Sireci v. State, 469 So. 2d 119, 121 (Fla. 1985). On the basis of his second Rule 3.850 motion and subsequent evidentiary hearing, the trial court granted Sireci a new sentencing proceeding. The Florida Supreme Court affirmed. State v. Sireci, 536 So. 2d 231 (Fla. 1988).

The trial court held a new penalty phase proceeding in April 1990. Sireci moved the court to prevent the State Attorney from referring to the fact that Sireci

had been sentenced to death or that he had been housed on death row. The trial court granted the motion.

This ruling came to the forefront of Sireci's sentencing proceeding during the testimony of Dr. Dorothy Lewis, one of Sireci's mental health experts. Part of her expertise derived from a study she performed on the mental health of adults and juveniles on death row. Sireci was one of the death row inmates observed for that study.

On cross-examination, the State Attorney attempted to impeach her testimony that Sireci suffered from paranoid ideation, a condition "involving suspiciousness or the belief that one is being harassed, persecuted or unfairly treated." The relevant testimony reads:

Q. Isn't there a history of people actually saying things about [Sireci]?
A. That is how a person, in part – it's usually with a, with a brain damage or whatever, how that kind of experience can then also make somebody distort and misinterpret.
But his is aware, he seemed to be aware of the times that he was teased, and then the times that he wasn't, and he just reacted. And then he, at least he believed the people who said, I didn't say anything. That's all I can tell you now.
Maybe they did and maybe he shouldn't have believed them, but –
Q. Maybe it's not a paranoid ideation, is that correct?
A. Maybe it's not, but I would put my reputation on the fact that it is. It is – I mean, it's demonstrated. It's one of the research criteria.
Q. It's what you expected to find of this man on <u>death row</u>, isn't that correct?

3

(emphasis added).

The trial court stopped the cross-examination and held a bench conference, where Sireci's counsel moved for a mistrial. Counsel argued to the court:

> It's been clear that there's to be no mention that Henry Sireci ever had death row status. We have taken great pains to do that. And now the cat is literally out of the bag and there's no way to come back from it. There's certainly no cautionary instruction that would cure the taint. It would only draw more attention to it. And that the only recourse could be, at this point, a mistrial.

The court denied the motion for a mistrial, but cautioned the State Attorney. Sireci's counsel lodged a continuing objection on the grounds of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The court did not provide a curative instruction or ask the jury to disregard the State Attorney's reference to death row.[1]

At the close of the evidence and after counsel made their closing arguments, the advisory jury recommended the death sentence by a vote of 11-1.

On May 1, 1990—after the advisory jury rendered its verdict, but before the trial court sentenced Sireci—Sireci filed a motion for a new penalty phase hearing before a different jury. The motion asked the trial court either to empanel a new

---

[1] The court did not offer to provide a curative instruction presumably because Sireci's counsel stated that an instruction would cause further prejudice. The court could have instructed the jury that Sireci was not then under a sentence of death and that where Florida chose to house Sireci had nothing to do with their job in recommending Sireci's sentence.

advisory jury or to give no weight to the advisory verdict because the State

Attorney's reference to death row had tainted the proceeding.[2]  The trial court

denied Sireci's motion on May 4, 1990, stating that "[the court] do[es] not find this

jury was tainted by knowledge or the evidence that was inadvertently presented at

the sentencing hearing."  On that same day, the trial court sentenced Sireci to

death.

Several jurors attended the May 4, 1990 sentencing hearing.  After Sireci

was sentenced, juror Charles Miller spoke with one of Sireci's investigators.

Miller informed the investigator that the jurors discussed whether Sireci had

previously been sentenced to death and that it impacted their deliberations.

Relying on this information, Sireci's attorney moved the court for leave to

interview the jurors.[3]  He submitted a supporting affidavit from Sireci's

investigator recounting his conversation with juror Miller.  The court heard the

motion on May 11, 1990.  Sireci's attorney argued that juror interviews would

better show whether the "death row" comment actually prejudiced the jurors'

deliberations.  Although not explicit, the motion impliedly asked the trial court to

---

[2]  The motion for rehearing was also grounded in (1) impermissible victim impact evidence and (2) the fact that the State Attorney elicited testimony that Sireci lacked remorse, which was not a statutory aggravating factor.

[3]  Counsel did not couch the motion as a motion to reconsider the court's May 4th ruling; the motion only asked to interview the jurors.

revisit its ruling that the jury had not been tainted by the death row comment. The court denied Sireci's motion to interview the jury, stating

> One of the considerations this court made when I originally granted the motion in limine was that this jury would probably figure out that Mr. Sireci had, in fact, been sentenced to death and been on death row. I think any halfway intelligent juror was going to make that determination based upon the facts of this case. And I don't see that that's going to render their verdict invalid. And I don't think you're going to find that out through interviewing the jurors.

The Florida Supreme Court affirmed Sireci's death sentence. Sireci v. State, 587 So. 2d 450, 455 (Fla. 1991) (per curiam). It first held that the trial court did not abuse its discretion in denying Sireci's motion for a mistrial. Id. at 453. According to the court, two portions of the record supported the trial court's statement that most jurors would infer that Sireci had been on death row. Id. First, Dr. Lewis testified on direct examination as a defense witness regarding her study of death row inmates, a study which included Sireci. Id. Second, the jury would likely suspect that Sireci had previously been sentenced to death because of the time-lapse between the murder and the sentencing hearing. Id. Regarding Sireci's motion to interview the jurors, the court "note[d] only that the Evidence Code prohibits judicial inquiry into the emotions, mental processes, or mistaken beliefs of jurors." Id. (citing Fla. Stat. § 90.607(2)(b)).

Sireci filed a petition for a writ of habeas corpus in the United States District

Court for the Middle District of Florida on October 3, 2002. His amended petition raised twelve claims, including his claim that the trial court erred by not granting a mistrial and further erred by refusing to allow Sireci to interview the jurors to prove the prejudice of the "death row" reference. The district court denied Sireci's petition but granted him a Certificate of Appealability under 28 U.S.C. § 2253 on the issue of whether the state court violated Sireci's constitutional rights by denying his motion for a mistrial and denying his motion to interview the jurors.

Because Sireci filed his habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010). Under AEDPA, federal courts cannot grant state prisoners habeas relief unless the state court adjudication of the petitioner's claim on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Having decided the Sireci's claims on the merits, the Florida Supreme Court's decision receives AEDPA deference.

After reviewing the record, we find that the Florida Supreme Court's

7

decision was neither an unreasonable application of federal law, nor based on an unreasonable determination of the facts. The time-lapse between Sireci's crime and the sentencing hearing, combined with his own expert's testimony regarding her death row study, would have alerted the jury to the fact that Sireci was being housed on death row. Such an inference is not an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). As such, the Florida Supreme Court did not unreasonably apply federal law when it determined that the prosecutor's reference to death row did not prejudice Sireci's sentencing hearing.[4]

Likewise, we cannot disturb the denial of Sireci's motion to interview the jurors. The Florida Supreme Court cited its rule of evidence prohibiting testimony by jurors that "essentially inheres in the verdict or indictment." Fla. Stat. § 90.607(b)(2). This rule is similar to Rule 606(b) of the Federal Rules of Evidence, which reads:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside

---

[4] We also note that a curative instruction would have been sufficient to cure what taint, if any, the State Attorney's comment created. Sireci's attorney, however, rejected that option and stood firm on his motion for a mistrial.

8

influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b). Under the rule, courts can inquire only as to "external" influences over the jury's deliberations. Tanner v. United States, 483 U.S. 107, 117, 107 S. Ct. 2739, 2746, 97 L. Ed. 2d 90 (1987). "External" influences are factors that come to the jury's attention from outside of the proceedings in the trial court. See, e.g., Parker v. Gladden, 385 U.S. 363, 363–64, 87 S. Ct. 468, 470, 17 L. Ed. 2d 420 (1966) (per curiam) (bailiff making disparaging comments about the defendant to the jurors); Remmer v. United States, 347 U.S. 227, 228–230, 74 S. Ct. 450, 450–451, 98 L. Ed. 654 (1954) (bribe offered to juror).

"Internal" influences, on the other hand, include actions during court proceedings and internal jury deliberations. Prohibiting testimony into these areas does not violate the constitution. Tanner, 483 U.S. at 126–27, 107 S. Ct. at 2751 (holding that Rule 606(b) does not violate the Sixth Amendment). This is because other procedural devices protect a defendant's trial rights, such as juror voir dire and trial court oversight. Id. at 127, 107 S. Ct. at 2751.

The death row comment Sireci complains of is an "internal" influence. The State Attorney's comment was made in open court and fully in view of the trial

9

judge.  Unlike Parker, where the bailiff's statements were made outside the trial proceedings, 385 U.S. at 363–64, 87 S. Ct. at 470, the trial judge here was perfectly able to ascertain potential prejudice of the State Attorney's statements and provide immediate remedies, such as a curative instruction.  Therefore, the Florida Supreme Court's denial of Sireci's request for an evidentiary hearing was not an unreasonable application of federal law.  For the same reasons, the district court did not err in denying Sireci an evidentiary hearing under 28 U.S.C. § 2254(e)(2).

The district court's decision denying Sireci's petition for a writ of habeas corpus is AFFIRMED.