DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DAVID WEINGRAD,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-0446

[September 27, 2017]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Steven J. Levin, Judge; L.T. Case No. 562013CF003008A.

Carey Haughwout, Public Defender, and Kai Li Aloe Fouts, Special Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Appellant, David Weingrad, appeals his conviction and life sentence entered below for first degree murder. He argues that: (1) the trial court erred in denying his motion to suppress his recorded confession, asserting that his *Miranda*[1] warnings failed to convey his right to have counsel present during questioning; and (2) the prosecutor's comment in closing argument that this was not a death penalty case improperly minimized the State's burden of proof. However, for the reasons discussed below, we find no merit in Weingrad's arguments, and therefore affirm.

## *Background*

Weingrad was charged with first degree murder with a weapon. Pretrial, he filed a motion to suppress his statement to police in which he confessed to murdering the victim. Weingrad argued his statement should be suppressed because the *Miranda* warnings were insufficient to inform

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

him of his right to have counsel present *during* questioning.

At the hearing on Weingrad's motion to suppress, the evidence reflected that he was advised of his *Miranda* rights as follows:

> DETECTIVE: Okay. You have the right to remain silent. Anything you say can and will be used against you in a court of law. *You have the right to speak to **an attorney and to have him or her with you before any questioning**. Okay? If you can't afford an attorney, one will be appointed for you before I ask you any questions. **If you - if you decide to answer questions now without an attorney present**, you still have the right to stop answering at any time.* Okay, do you understand that?
>
> . . . .
>
> Okay. Knowing and understanding the rights as I've explained them to you, do - do you want to talk to me today?
>
> APPELLANT: Yeah.

(emphases added). The trial court denied the motion to suppress, finding that the words used by the detective adequately and reasonably conveyed to Weingrad that he could have a lawyer before and during questioning. The recorded statement was later admitted into evidence at trial.

Prior to the start of jury selection, the trial court advised the parties that it would read the indictment charging Weingrad with first degree murder, and asked the parties if it should further advise the jury pool that *the State was not seeking the death penalty*, to which both parties agreed that it should do so. The jury was advised that the State was not seeking the death penalty.

Throughout the trial, the defense conceded that Weingrad had committed second degree murder, but disputed the first degree murder charge by arguing that this was not a "planned premeditated crime," and that he had "snapped," and had acted with a depraved mind.

During the State's closing argument, the State advised the jury that the trial court would instruct them on the law and that if the State made any changes to the meaning of the instructions in its argument, then to disregard same, reiterating that only the trial judge instructs on the law, not the State. The prosecutor then noted that as the defense conceded to the murder, the issue was whether this was a first or second degree

murder, but more specifically, whether the State proved beyond a reasonable doubt the elements of first degree murder. The prosecutor specifically noted that the standard of proof for first degree murder was beyond a reasonable doubt, the same standard for all other crimes. In discussing the difference between first and second degree murder, the prosecutor stated:

> STATE: [T]o believe that a person has to plan a murder for it to be first degree premeditated murder is not the law. You're not, *this is not a death penalty case. If it were a death penalty case we might discuss planning, heightened premeditation, cold, calculated and premeditated, but it's not, there doesn't have to be planning.*

(emphasis added). Defense counsel did not object to this comment. The State then listed the elements required to prove first degree murder, and in discussing the element of premeditation, stated: "A premeditated intent to kill must be . . . formed before the killing. We talked about this briefly, *this is not a death penalty case, we don't have to show that this was a plan.*" (emphasis added). At this, defense counsel objected, stating that the repeated references to the death penalty in the State's closing was not relevant and therefore improper. At side bar, the trial court indicated that the standard of proof was not different in a death penalty case, but the prosecutor argued that he was addressing the defense's remarks about "planning" in its opening statement and distinguishing the "heightened premeditation" required for death penalty cases. The trial court sustained the objection. However, the defense did not request a curative instruction, nor did it move for a mistrial. Upon resuming his closing argument, the prosecutor stated multiple times that the standard of proof as to each element was for the jury to find beyond a reasonable doubt.

Ultimately, the jury found Weingrad guilty of first degree murder as charged, and he was sentenced to life in prison. He gave notice of appeal.

*Analysis*

*Motion to Suppress*

In reviewing an order on a motion to suppress, we defer to the trial court's findings of fact so long as they are supported by competent, substantial evidence, but review *de novo* the trial court's application of law to the facts. *Peterson v. State*, 94 So. 3d 514, 528 (Fla. 2012) (citing *Ross v. State*, 45 So. 3d 403, 414 (Fla. 2010).

Weingrad contends that the trial court erred in denying the motion to

3

suppress his recorded confession because the *Miranda* warnings he was given failed to convey that he had a right to have counsel present *during* questioning. Instead, he argues that the warnings he was given only advised him of his right to speak with counsel *before* questioning. However, Weingrad's argument lacks merit. Rather, as the State argues and as the trial court properly found, the rights read to Weingrad reasonably conveyed that he had the right to the presence of an attorney *during* any questioning.

In *Florida v. Powell (Powell II)*, 559 U.S. 50 (2010), the Supreme Court considered the sufficiency of a *Miranda* warning advising a suspect that he had "the right to talk to a lawyer **before** answering any of [the law enforcement officers'] questions," and that he can invoke this right "at any time." *Id.* at 53 (emphasis added). The Court held that the warning was adequate and that the two warnings in combination reasonably conveyed "the right to have an attorney present not only at the outset of the interrogation, but at all times." *Id.* at 62. In reaching this conclusion, the Court reasoned that:

> In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement. *The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by Miranda.'" Duckworth,* 492 U.S., at 203, 109 S.Ct. 2875 (quoting *Prysock,* 453 U.S., at 361, 101 S.Ct. 2806).

*Id.* at 60 (alteration in original and emphasis added).

Similarly, in *Rigterink v. State*, 66 So. 3d 866 (Fla. 2011), our supreme court reviewed the sufficiency of a *Miranda* warning to determine whether it reasonably conveyed the right to counsel before and during a custodial interrogation. *Id.* at 870. The warnings in that case advised the suspect that he had "the right to have an attorney **present** *prior to* questioning." *Id.* at 892 (**emphasis added** and *emphasis in original*). The supreme court applied the reasoning in *Powell II*, as follows:

> As with the synonymous warning in *Powell II, when Rigterink's warning is given a commonsense reading, it reasonably conveys to a suspect that he or she has the right to the presence of counsel both before and during an interrogation.* **This is because the use of the word "present," along with the "before" and "prior to," convey to a suspect that his or**

4

***her right to counsel begins before the custodial interrogation and, as a result, will logically continue during the interrogation. The use of "prior to," like the use of "before" in Powell II, is a mere temporal requirement providing when the right to counsel begins. As with the term "before," nothing in the use of the phrase "prior to" indicates that the right to counsel's presence ends when questioning begins.***

*Id.* (emphases added). The court further explained that the warning in *Rigterink* reasonably conveyed the right to counsel with more clarity than in *Powell II* because Rigterink was advised he may have counsel "present" prior to questioning, indicating that if Rigterink wanted, an attorney would have been "present" with him both before and during the interrogation. *Id.* at 893. Thus, the court concluded that the right to counsel warning was sufficient under *Miranda. Id.*

In this case, the warning given to Weingrad mirrors that in *Rigterink.* Wengrad was advised he could speak to an attorney and "have him or her **with** [him] before any questioning." (emphasis added). Weingrad was also advised he could "decide to answer questions now *without an attorney present,*" and that he could stop at any time (emphasis added). As the State argues, a common sense reading of these warnings indicates that Weingrad was advised that he had the right to have an attorney *with* him *before* speaking with the police, and that such right would logically continue during the interrogation. *See Rigterink,* 66 So. 3d at 893 ("It is indefensible that Rigterink believed that the warnings stood for the proposition that he could have counsel present before questioning began and that, once questioning began, counsel must leave.").

Weingrad's contention that his warnings were deficient because they did not include a "catch-all" phrase indicating the right would continue through the interrogation "as was the case in *Powell II,*" fails. In fact, the *Rigterink* rejected this very argument, stating:

> [T]he sufficiency of the warning in *Powell II* **did not hinge on the catch-all phrase.** Rather, the catch-all phrase merely confirmed that the defendant in *Powell II* could exercise his right to counsel during the custodial interrogation. *See id.* (stating that the catch-all phrase "confirmed that [the defendant] could exercise [the right to counsel] while the interrogation was underway"). **The statement that the defendant had the right to counsel before the custodial interrogation, when taken alone in context, was sufficient**

5

**to satisfy *Miranda*, as it, in and of itself, reasonably conveyed to the defendant that his right to counsel began before the custodial interrogation and logically continued throughout the interrogation.** *See id.* ("In context, however, the term 'before' merely conveyed when Powell's right to an attorney became effective—namely, before he answered any questions at all. Nothing in the words used indicated that counsel's presence would be restricted after the questioning commenced. Instead, the warning communicated that the right to counsel carried forward to and through the interrogation. . . .").

*Id.* at 892. (emphases added).

Therefore, as in *Powell II* and *Rigterink*, we conclude that the warnings given to Weingrad were sufficient to convey to him that he could have a lawyer both before and *during* questioning. As such, the trial court did not err in denying Weingrad's motion to suppress and the ruling is affirmed.

We note that, even had Weingrad's recorded statement been obtained in violation of *Miranda*, any error in admitting the statement at trial was harmless where Weingrad did not contest committing the murder, but rather only contested premeditation. Additionally, as the State points out, witness testimony was admitted at trial from Weingrad's co-defendant that he woke her, with a sledgehammer in his hands, and told her "I did it. I did it," and that she then discovered the victim dead laying on her bed with her head misshapen and blood and tissue everywhere. There was also ample testimony of premeditation from multiple witnesses testifying to the nature of the strained relationship between Weingrad and the victim and that he had told them that he was trying to find a way to kill the victim and make it look like an accident.

*Closing Argument*

The trial court's rulings regarding comments made during closing arguments are reviewed for an abuse of discretion. *Jackson v. State*, 89 So. 3d 1011, 1018 (Fla. 4th DCA 2012). "In order to preserve the issue for appellate review, a party must have made the same argument to the trial court that it raises on appeal." *Morrison v. State*, 818 So. 2d 432, 446 (Fla. 2002); *see also Archer v. State*, 613 So. 2d 446, 448 (Fla. 1993) (stating the issue "must be presented to the lower court and the *specific* legal argument or ground to be argued on appeal must be part of that presentation if it is to be considered preserved" (emphasis added) (quoting

*Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). Notably, where a contemporaneous objection to a prosecutor's improper closing argument is sustained, it should be followed by a motion for mistrial in order to be properly preserved for appeal. *Holton v. State*, 573 So. 2d 284, 288 (Fla. 1990).

Weingrad argues on appeal that reversible error occurred because the prosecutor minimized the burden of proof in closing argument by stating that "this is not a death penalty case." Notably, Weingrad acknowledges he did not object to the comments the first time the State made it and that he failed to request a curative instruction or move for a mistrial after the trial court sustained his later objection, as required to properly preserve the argument for appeal. However, he argues on appeal that a curative instruction would not have been sufficient to cure the damage done, asserting that the "cat had been let out of the bag." This assertion lacks merit. This is not the case where some prejudicial fact was supposed to be kept from the jury and was blurted out so that the bell could not have been "unrung." Rather, to the extent the State's comment was arguably a misstatement of the law, a simple curative instruction directing the jury to disregard such and instead to apply the correct standard would have been sufficient to cure the comment. *See Jackson v. State*, 599 So. 2d 103, 104 (Fla. 1992) (curative instruction was sufficient to dispel any harm done by erroneous instruction).

Nevertheless, Weingrad contends that the prosecutor's comment enunciated an erroneous and misleading statement of the State's burden on proof, improperly suggesting that the burden was less in a case where the death penalty was not being sought. Weingrad argues that the standard for a conviction was the same either way, and that there was no purpose for the State to even mention the death penalty in this case. Rather, he argues that the State's comments constituted fundamental error by minimizing its burden to prove every element beyond a reasonable doubt. We disagree.

As the State argues, the comments Weingrad challenges on appeal do not appear to have been impermissible, nor do they rise to the level of fundamental error. As discussed above, throughout the trial, the defense conceded to second degree murder, challenging instead the premeditation element required for first degree murder by arguing that this was not a "planned premeditated crime" in its opening statement. Notably, any purported "[p]rosecutorial improprieties must be viewed in the context of the record as a whole to determine if a new trial is warranted." *Martinez v. State*, 761 So. 2d 1074, 1082 (Fla. 2000) (quoting *Sireci v. State*, 587 So. 2d 450, 452 (Fla. 1991)).

Here, read in context, it is evident that in making the challenged comments during its closing argument, the State was countering the defense's opening remarks that suggested that first degree murder required planning. In so doing, the prosecutor commented that this was not a death penalty case and that the State was not required to show planning in order to prove premeditation. This was an accurate statement. *See Porter v. State*, 564 So. 2d 1060, 1064 (Fla. 1990) ("The Court has adopted the phrase 'heightened premeditation' to distinguish this aggravating circumstance from the premeditation element of first-degree murder. Heightened premeditation can be demonstrated by the manner of the killing, but the evidence must prove beyond a reasonable doubt that the defendant *planned or arranged* to commit murder before the crime began.") (emphasis added and internal citations omitted). Indeed, the remarks did not minimize the State's burden of proof as to first degree murder. Instead, read in context, it is evident that the purpose of the comments was to clarify that premeditation did not require "planning" as suggested by the defense. Therefore, under the circumstances of this case, the State's comment appears to have been fair comment on the defense's opening remarks. *See Pagan v. State*, 830 So. 2d 792, 809 (Fla. 2002).

Furthermore, in making this comment, the State did not argue that the reasonable doubt standard was inapplicable to the element of premeditation. On the contrary, the State repeatedly advised the jury that it bore the burden of proof and that the standard was beyond a reasonable doubt. Additionally, the prosecutor noted that the standard of proof for first degree murder was the same standard for proving other crimes and that any interpretation of its argument indicating otherwise should be disregarded and the jury should only follow the trial court's instructions. Moreover, to the extent Weingrad argues that there should have been no mention of the "death penalty" in this case, such argument is waived to the extent both parties agreed on the record that the trial court inform the jury from the outset that this was not a death penalty case.

Moreover, "[t]he law presumes that the jury has followed all of the trial court's instructions, in the absence of evidence to the contrary." *Garzon v. State*, 939 So. 2d 278, 285 (Fla. 4th DCA 2006). Here, as the State points out, prior to closing arguments and several times during the proceedings, the trial judge instructed the jury that the attorney's statements were not evidence and specifically stated that the attorneys' statements were not the jury's instructions on the law. Additionally, after closing arguments, the trial court specifically instructed the jury as to the State's burden of proof. Therefore, as there is no evidence to the contrary, we presume that the jury followed the judge's instructions, and applied the correct standards and considerations to the evidence.

8

Having found no error in the denial of Weingrad's motion to suppress or in the State's comments in closing argument, we affirm.

*Affirmed.*

TAYLOR, MAY and CONNER, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***