# Supreme Court of Florida

_____

No. SC2024-0232
_____

**MICHAEL LAWRENCE WOODBURY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2024-1127
_____

**MICHAEL LAWRENCE WOODBURY,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

June 11, 2026

PER CURIAM.

Michael Lawrence Woodbury, a prisoner under a sentence of death, appeals the circuit court's denial of his initial motion for postconviction relief under Florida Rule of Criminal Procedure

3.851 and petitions this Court for a writ of habeas corpus.  We have jurisdiction.  *See* art. V, § 3(b)(1), (9), Fla. Const.  For the reasons that follow, we affirm the denial of postconviction relief and deny Woodbury's petition.

## I.

### A.

Woodbury, while serving life sentences for killing three people, murdered his cellmate.  *Woodbury v. State*, 320 So. 3d 631, 638 (Fla. 2021).  He did so by barricading the door to his cell and then brutalizing his cellmate for hours with makeshift weapons.  *Id.*  At his first court appearance, Woodbury invoked his right to represent himself and underwent a *Faretta*[1] inquiry.  *Woodbury*, 320 So. 3d at 638.  Woodbury remained steadfast in his decision to waive counsel, continually stating that he understood the disadvantages he was to face and expressing frustration with the repeated *Faretta* inquiries.  *Id.* at 638-41.  He later declined to present mitigation, pled guilty to first-degree murder, and was sentenced to death.  *Id.* at 641-43.

---

1.  *Faretta v. California,* 422 U.S. 806 (1975).

We affirmed Woodbury's conviction and sentence on direct appeal.[2] *Id.* at 643. He then sought review by the United States Supreme Court via a petition for writ of certiorari, which it denied. *Woodbury v. Florida,* 142 S. Ct. 1135 (2022).

**B.**

Woodbury timely filed a motion to vacate judgment of conviction and sentence pursuant to Florida Rule of Criminal

---

2. Woodbury presented eleven claims of error arguing that the trial court erred by: (1) granting Woodbury's waiver of counsel and request to proceed pro se without first ordering a mental health evaluation; (2) failing to sua sponte order a competency hearing to determine if Woodbury was competent to stand trial; (3) accepting a guilty plea that was not entered intelligently and voluntarily and had no factual basis; (4) failing to renew the offer of counsel at the start of the defense case-in-chief and when Woodbury announced his change of plea; (5) accepting Woodbury's waiver of mental health mitigation without appointing special counsel to present mitigation evidence; (6) finding that the murder was committed in a cold, calculated, and premeditated manner, and instructing the jury on that aggravator; (7) admitting a noncomprehensive presentence investigation report that contained impermissible sentencing recommendations; (8) assigning minimal weight to the mitigator of extreme mental or emotional disturbance; (9) rejecting a requested special jury instruction on mercy; and (10) failing to instruct the jury that it must find *beyond a reasonable doubt* that the aggravators outweighed the mitigators and were sufficient for the death penalty. *Woodbury,* 320 So. 3d at 643. The eleventh claim was a request for proportionality review which we declined to address in light of our decision in *Lawrence v. State,* 308 So. 3d 544 (Fla. 2020). *Woodbury,* 320 So. 3d at 643 n.3.

- 3 -

Procedure 3.851, seeking to vacate his conviction and sentence on seven grounds.[3] The circuit court held a *Huff*[4] hearing and summarily denied all seven claims. Woodbury appeals and has also filed a petition for writ of habeas corpus raising two claims.[5]

## II.

### A.

In reviewing a summary denial of an initial 3.851 motion, we affirm "if the filings show that the movant has failed to state a facially sufficient claim, there is no issue of material fact to be

---

3. Woodbury argued: (1) his death sentence violates the Eighth Amendment because of his mental illness; (2) the trial court unconstitutionally encouraged him to wear shackles and prison clothes; (3) he was incompetent and should not have been allowed to proceed pro se; (4) he was affirmatively misled during his *Faretta* inquiries; (5) standby counsel rendered ineffective assistance by failing to call witnesses, obtain mental health records, and advise the court-appointed expert about his mental health status; (6) the State violated *Brady v. Maryland* by failing to turn over mental health records; and (7) he is insane and cannot be executed.

4. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

5. Woodbury argues in his petition that (1) appellate counsel on direct appeal was ineffective for failing to raise the claim that Woodbury was unconstitutionally forced to wear shackles and prison garb and (2) appellate counsel was ineffective for failing to raise the claim that Woodbury was misled during the *Faretta* inquiries.

- 4 -

determined, the claim should have been brought on direct appeal, or the claim is positively refuted by the record." *Kocaker v. State*, 311 So. 3d 814, 821 (Fla. 2020) (quoting *Barnes v. State*, 124 So. 3d 904, 911 (Fla. 2013)).  As to those claims that could have been raised on direct appeal, we have said that they are procedurally barred because such claims "are not cognizable through collateral attack" and "are precluded from our consideration by collateral review."  *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983).  Our review is de novo.  *Kocaker*, 311 So. 3d at 821.

**B.**

Woodbury presents seven issues for our consideration.  He concedes that his insanity claim is not ripe for our review, so we do not address it.  As to the remaining six claims, we conclude none demonstrate error.

To start, Woodbury argues that the circuit court erred when it summarily denied his claim that the State committed *Brady*[6] and *Giglio*[7] violations.  However, his postconviction motion frames the

---

6.  *Brady v. Maryland*, 373 U.S. 83 (1963).

7.  *Giglio v. United States*, 405 U.S. 150 (1972).

- 5 -

issue only as a *Brady* violation.  For that reason, any claim based on *Giglio* is unpreserved for appeal and cannot serve as a basis for relief.  *See Wickham v. State*, 124 So. 3d 841, 853 (Fla. 2013) (holding that a failure to raise a *Giglio* claim in a postconviction motion renders the argument unpreserved for appellate review).

As to the alleged *Brady* violation, the postconviction court properly denied Woodbury's claim.  The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Rhodes v. State*, 986 So. 2d 501, 507 (Fla. 2008) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  As a result, courts have denied postconviction relief based on alleged *Brady* violations where the motion failed to demonstrate the relevant information was unavailable to the defense.  For example, in *Owen v. State*, 986 So. 2d 534, 547 (Fla. 2008), we held that a postconviction motion alleging a *Brady* claim was insufficiently pled where the claim was based on the defendant's therapist's notes, his motion did not explain how he was unaware of his own therapist as a source of potentially exculpatory information, and his motion failed to allege that the notes were made unavailable to the defense by the State's actions.

- 6 -

Woodbury's postconviction motion is based on allegations that the State did not disclose Woodbury's mental health records from Jackson Brook Institute.[8] Importantly though, the motion does not allege that the defense did not possess or have access to the relevant mental health records. The motion likewise did not allege that Woodbury could not have obtained the records.[9] Instead, Woodbury said he was only prejudiced by the alleged nondisclosure because the court-appointed mental health expert and the trial court were unaware of the information contained in the records. Like *Owen*, Woodbury's claim, which was based entirely on his own

---

8. Specifically, Woodbury says the State failed to disclose a discharge summary from his second admission to Jackson Brook Institute (which occurred on March 31, 1995). The discharge summary contained a history of Woodbury's illness and described Woodbury's 1994 psychotic episode, his prior admission to Jackson Brook Institute, and two admissions to Augusta Mental Health Institute. Woodbury also references a copy of his psychiatric evaluation and a history and physical form from his second Jackson Brook Institute admission.

9. In his reply brief, Woodbury cites to the transcript of the postconviction hearing in support of his argument that his postconviction motion alleges Woodbury did not have the relevant medical documents. But even to the extent counsel's argument is construed as a statement that Woodbury did not have the records, counsel's mischaracterization of the motion at a hearing does not cure deficient pleading.

mental health records, was insufficiently pled and properly denied.[10]

Woodbury next argues that the postconviction court erred when it denied his claim that the trial court "unconstitutionally encouraged [him] to wear prison garb and shackled [him]." But as the postconviction court concluded, this argument could have been raised on direct appeal and is therefore procedurally barred. *See Sireci v. State*, 773 So. 2d 34, 40 n.11 (Fla. 2000) (postconviction shackling claim was procedurally barred since it was known during the direct appeal and could have been raised then). And Woodbury makes no attempt to argue he could not have raised the issue. It was properly denied.

Likewise, Woodbury's third claim that the trial judge misled him during the *Faretta* inquiries is procedurally barred. As Woodbury acknowledges, he argued on direct appeal that the trial court erred when it granted Woodbury's request to proceed pro se without first ordering a mental health evaluation. *Woodbury*, 320 So. 3d at 645-47. Upon consideration of the argument, we

---

10. To the extent Woodbury presents a due process argument as a subclaim, we reject it as unpreserved.

concluded there was no error. *Id.* Now, Woodbury argues his claim is unique because it is based on the trial court's affirmative misadvice about securing witnesses on Woodbury's behalf. But this challenge too is a mere iteration of his direct appeal claim and therefore procedurally barred from review. *See Demps v. State*, 416 So. 2d 808, 809 (Fla. 1982) (defendant's "claim was effectively raised on direct appeal" and therefore precluded in subsequent proceedings); *Dailey v. State*, 283 So. 3d 782, 793 (Fla. 2019) (holding postconviction claims that were merely a restatement of prior claims were procedurally barred). Even were it new, it still does not escape procedural bars because it could have been raised on direct appeal. *Smith*, 445 So. 2d at 325.

Woodbury's fourth argument is that the postconviction court erred in summarily denying his claim that the Eighth Amendment prohibits his execution due to his mental illness. Woodbury again presents a claim that could have been raised on direct appeal. *Id.* Woodbury attempts to evade the procedural bar by claiming that evolving standards of decency require review here. But Woodbury argues that his mental illness has been prevalent since before his direct appeal, which prevents him from clearing the procedural

- 9 -

hurdles. *See Zack v. State*, 371 So. 3d 335, 349 (Fla. 2023) ("To avoid this bar, [defendant's] current iteration of his claim rests on an 'evolving standards of decency' argument. But as noted already, 'evolving standards of decency' arguments in the Eighth Amendment context have long been recognized, and [defendant] could have raised this claim on direct appeal." (citations omitted)); *Carroll v. State*, 114 So. 3d 883, 886-87 (Fla. 2013) (finding a mental illness and evolving standards of decency Eighth Amendment claim procedurally barred because it could have been raised on direct appeal); *Covington v. State*, 348 So. 3d 456, 466 (Fla. 2022) ("Because this Court has repeatedly concluded that there is no categorial bar on execution of the mentally ill and because this claim should have been raised on direct appeal, there was no error in [summarily] denying this claim." (citation omitted)); *Simmons v. State*, 105 So. 3d 475, 511 (Fla. 2012).

Next, Woodbury argues that the postconviction court reversibly erred in summarily denying his claim that standby counsel rendered ineffective assistance of counsel. This claim fails because it is not cognizable. A pro se defendant, " '*even if he has standby counsel*[,]' . . . 'cannot later complain that the quality of his

- 10 -

defense was substandard or amounted to ineffective assistance of counsel.'" *Doty v. State*, 403 So. 3d 209, 218 (Fla. 2025) (quoting *McKenzie v. State*, 153 So. 3d 867, 878-79 (Fla. 2014)); *see also Behr v. Bell*, 665 So. 2d 1055, 1056-57 (Fla. 1996) ("[A] defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel.  Such a defendant cannot thereafter complain that the quality of his defense was a denial of 'effective assistance of counsel.'" (citing *Faretta*, 422 U.S. at 835 n.46)).  The postconviction court properly denied relief.

Finally, Woodbury argues that the postconviction court erred in summarily denying his claim that he was so mentally ill that he was incompetent to proceed pro se at trial.  But we already considered this claim in Woodbury's direct appeal.[11]  *See Woodbury*, 320 So. 3d at 645 ("Woodbury argues that even if he was competent to stand trial, the trial court knew he had a severe mental illness that rendered him incompetent to represent himself, and that the trial court therefore erred in granting his request to proceed pro

---

11.  Woodbury acknowledges the claim was raised on direct appeal but argues we "misapprehended" the facts.  Such an allegation does not except his claim from the procedural bar.

- 11 -

se.").  It is therefore, as the postconviction court noted, procedurally barred.

In sum, Woodbury fails to demonstrate the postconviction court erred in summarily denying his motion for postconviction relief.  We affirm.

### III.

### A.

We next consider Woodbury's petition for writ of habeas corpus.  To grant habeas relief based on ineffectiveness of appellate counsel in accordance with the *Strickland*[12] standard, we consider whether the alleged omissions are outside the objective range of professionally acceptable performance and whether there is a reasonable probability that the errors prejudiced the defendant. *Smith v. State,* 330 So. 3d 867, 875 (Fla. 2021).  Appellate counsel cannot be deemed ineffective for failing to raise an issue that "would in all probability have been found to be without merit."  *Rutherford v. Moore,* 774 So. 2d 637, 643 (Fla. 2000) (quoting *Williamson v. Dugger,* 651 So. 2d 84, 86 (Fla. 1994)).  For that reason, appellate

---

12.  *Strickland v. Washington,* 466 U.S. 668 (1984).

counsel also cannot be deemed ineffective for failing to raise an unpreserved issue unless the alleged error constitutes fundamental error. *Johnson v. Moore*, 837 So. 2d 343, 347 (Fla. 2002) (citing *Rutherford*, 774 So. 2d at 646). Fundamental error reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *State v. Delva*, 575 So. 2d 643, 644-45 (Fla. 1991) (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)). "Error during the penalty phase is fundamental if it is 'so prejudicial as to taint the jury's recommended sentence.'" *Cruz v. State*, 320 So. 3d 695, 718 (Fla. 2021) (quoting *Jones v. State*, 949 So. 2d 1021, 1037 (Fla. 2006)).

## B.

Woodbury raises two claims in his petition—both of which are similarly argued in his postconviction appeal. First, Woodbury argues that the trial judge unconstitutionally encouraged him to wear prison clothing and shackles and that appellate counsel's failure to bring this claim warrants habeas relief. Second, Woodbury argues that his waiver of his right to counsel was unknowing and involuntary because of misleading statements of

- 13 -

the trial judge and appellate counsel was ineffective for not raising this claim before. Both arguments fail.

As to his argument regarding prison clothing and shackles, Woodbury failed to object to wearing either. The record demonstrates that Woodbury initiated a conversation about restraints by saying that he "need[ed] [his] hands free." The judge responded that he made the decision to restrain Woodbury and he could wear a stun belt instead of the handcuffs to be discreet. Woodbury answered "I'll just wear the cuffs" and dismissed the judge's reassurances[13] about the stun belt. Woodbury did not object during the discussion. Later, the following exchange occurred:

> THE COURT: All right. Do you have any problems—I mean we've talked about it multiple times, with regard to the fact that you're wearing your prison clothes as well as cuffs and things like that, do you have any problem walking up there when you're called as a witness or would you prefer to be up there when they come back?
>
> MR. WOODBURY: No, sir. The only question about logistics I have, would I be able to use that laser pointer?

---

13. The judge pleaded with Woodbury: "No, no, no, wait. But you're going to know it's there, but I've never seen one where somebody had to push the button. . . . Wait, wait, don't give up so easily."

The state attorney subsequently asked: "[J]ust for the record, obviously Mr. Woodbury is wearing a blue prison uniform which he requested and handcuffs and shackles which he requested. Is that still your request, Mr. Woodbury, or would you like to be dressed out different?" Woodbury responded, "This is excellent."

Despite his failure to object, Woodbury urges this Court to consider the claim preserved because objections do not require "magic words" and the trial court, though earnest, misunderstood the law. We reject counsel's invitation because Woodbury's status as a pro se defendant does not relieve him from his obligation to preserve claims for appellate review. *See Stueber v. Gallagher*, 812 So. 2d 454, 457 (Fla. 5th DCA 2002) (observing that in Florida, pro se litigants are bound by the same rules that apply to counsel and pro se litigant was therefore not excused from preservation requirements); *see also McKenzie v. State*, 29 So. 3d 272, 279 (Fla. 2010) (finding an appellate challenge unpreserved and procedurally barred where pro se capital defendant did not make a timely objection during jury selection). That is the case even if the trial court, as Woodbury argues it did, misunderstands the law. *See Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978) ("The requirement

- 15 -

of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings.").

After careful review, we conclude Woodbury failed to preserve any error related to his attire or restraints. But that does not end our analysis because Woodbury also argues that the issue still should have been brought by appellate counsel on direct appeal as fundamental error. In support, Woodbury cites *Deck v. Missouri,* 544 U.S. 622 (2005),[14] arguing fundamental error occurred because there was no basis to shackle him, and the determination was made without a pre-shackling hearing.

We conclude any error was not fundamental. The right to be free of restraint is not absolute. *Bryant v. State*, 785 So. 2d 422, 428 (Fla. 2001). To the contrary, both the United States Supreme

_____

14. *Deck* held that the Federal Constitution prohibits "the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." 544 U.S. at 629.

Court and this Court recognize that shackles may be used when warranted by the circumstances. *See Deck*, 544 U.S. at 633; *Bryant*, 785 So. 2d at 428 (collecting cases). In addition, this Court has held that a finding of the need to restrain on the record is only required when a defendant timely objects. *See, e.g., Bryant*, 785 So. 2d at 429 ("a hearing on necessity must precede the decision to shackle *if a defendant timely objects and requests an inquiry into the necessity for the restraints*" (emphasis added)); *see also Finney v. State*, 660 So. 2d 674, 682-83 (Fla. 1995) (rejecting a claim that the trial court erred when it "failed to inquire into the reasons why [the defendant] was shackled" because the defense "acquiesced to proceeding without further inquiry"). And even where an objection is made, we have applied the harmless error doctrine to a shackling error. *See, e.g., Bryant*, 785 So. 2d at 429-30.

Given Woodbury's violent history, his status as a pro se defendant,[15] and our characterization of shackling errors as subject

---

15. A court may take a defendant's pro se status into consideration when deciding whether to impose some form of restraint on him during trial. *Weaver v. State*, 894 So. 2d 178, 194 (Fla. 2004) (where a defendant charged with first-degree murder represented himself and moved about the courtroom in close proximity to trial participants, especially adverse witnesses, the trial

to harmless error review, any error would not have been of the type without which the guilty verdict and the jury's recommended sentence could not have been obtained. Appellate counsel cannot be deemed ineffective for failing to raise an unpreserved and nonmeritorious claim. *See Farina v. State*, 937 So. 2d 612, 629-30 (Fla. 2006). This habeas claim is denied.

In his second claim of ineffective assistance of appellate counsel, Woodbury argues that appellate counsel should have included the trial court's affirmative misadvice regarding its responsibility in securing the appearance of defense witnesses as a subclaim to the challenge of the *Faretta* waiver. However, even had appellate counsel framed the *Faretta* argument in this way, it lacks merit. As a result, counsel cannot be deemed ineffective.

As we have already determined:

> [S]tarting from his first appearance, Woodbury never wavered in his insistence on representing himself at trial. As it was required to do upon receiving an unequivocal request for self-representation, the trial court explained the benefits of counsel and the pitfalls of self-representation and conducted a full *Faretta* inquiry. The court renewed the offer of counsel and conducted

court did not abuse its discretion in ordering the wearing of a stun belt even though Weaver had no prior history of violent courtroom behavior).

- 18 -

additional *Faretta* inquiries approximately a dozen times over the course of the proceedings. At the conclusion of each inquiry, the court found that Woodbury's rejection of the offer of counsel was knowing and intelligent and that Woodbury was competent to make his decision. We agree. Woodbury responded appropriately to the court's questions and indicated that he understood both the proceedings against him and the rights he was giving up by proceeding pro se.

*Woodbury*, 320 So. 3d at 646-47 (footnote omitted). A review of the record demonstrates that the trial court conducted numerous *Faretta* inquiries throughout the trial proceedings, specifically telling Woodbury seven times that an attorney could issue subpoenas to compel the presence of witnesses. To the extent this argument is not procedurally barred, it would have been nonmeritorious, and counsel was not ineffective for failing to raise it. Woodbury's petition is denied.

## IV.

We affirm the summary denial of Woodbury's motion for postconviction relief and deny his petition for writ of habeas corpus.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
TANENBAUM, J., did not participate.

- 19 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Okeechobee County,
       Sherwood Bauer, Jr., Judge
       Case No. 472018CF000164CFAXMX
And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Capital Collateral Regional Counsel, Marie-Louise Samuels Parmer, Special Assistant Capital Collateral Regional Counsel, and Jeanine Cohen, Staff Attorney, Southern Region, Fort Lauderdale, Florida,

       for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, and Lisa-Marie Lerner, Senior Assistant Attorney General, West Palm Beach, Florida,

       for Appellee/Respondent